

# In the
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-24-00034-CR

RODNEY GENE REYNOLDS, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 124th District Court
Gregg County, Texas
Trial Court No. 49,921-B

Before Stevens, C.J., van Cleef and Rambin, JJ.
Memorandum Opinion by Justice van Cleef

MEMORANDUM OPINION

After the trial court denied Rodney Gene Reynolds's motion to suppress, Reynolds pled guilty to possession or promotion of child pornography.[1] The trial court sentenced Reynolds to nine years' imprisonment. Reynolds appeals, claiming error in the trial court's denial of his motion to suppress. Upon our review of the record and relevant caselaw, we overrule Reynolds's point of error and affirm the trial court's judgment.

I.      Background

Longview Police Department Detective Chris Taylor contacted Special Agent Daniel Collins of the Texas Department of Public Safety's Criminal Investigation Division about a case involving possible child pornography possession. Collins began investigating an internet protocol (IP) address that had received pornographic images of children. That IP address was registered to a residence at 2221 Chandler Street in Kilgore, and Reynolds paid for the internet service subscription. Collins and other law enforcement officers executed a search warrant at the Chandler Street residence and seized several devices. Reynolds was not present, and persons at the Chandler Street house suggested he might be at his parents' house at 917 Green Blackmon Road.

Collins and two other agents went to the house on Green Blackmon Road, where Collins made contact with Reynolds. Collins and Reynolds spoke in Collins's truck, and Collins

---

[1]*See* TEX. PENAL CODE ANN. § 43.26 (Supp.).

2

described his investigation to Reynolds, who denied perusing or obtaining child pornography.[2] Reynolds told Collins that he previously worked and stayed at the house on Chandler Street. He also told Collins that, inside the Green Blackmon Road residence, Reynolds had a laptop computer that he frequently used and connected to the IP address at the house on Chandler Street. Collins asked, "[W]ould you mind if I took a look at [the laptop computer]," Reynolds assented, and the two then exited the truck. Reynolds led Collins into his parents' house and then to Reynolds's bedroom. In the room, Collins saw a laptop computer on Reynolds's bed. Reynolds confirmed that that was the laptop computer he had used to access the IP address at 2221 Chandler Street. Collins asked Reynolds, "Can we search it," and Reynolds declined. At that point, Collins decided to seize the laptop and gave Reynolds a receipt for the computer.

Reynolds asked the trial court to suppress any evidence obtained from the laptop computer, arguing that Collins's seizure violated the Fourth Amendment's prohibition of warrantless searches. At the suppression hearing, Collins testified about why he seized the laptop computer: "[Reynolds] could have wiped the [laptop] computer, erased all of its contents. He could have thrown it in the dumpster."

## II.    Standard of Review

We review a trial court's ruling on a motion to suppress under a bifurcated standard of review, giving almost total deference to the trial court's determination of historical facts that turn on credibility and demeanor while reviewing de novo other application-of-law-to-fact issues. *Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002); *Carmouche v. State*, 10

---

[2]The State played a recording of the conversation between Collins and Reynolds, which corroborated much of Collins's testimony.

S.W.3d 323, 327 (Tex. Crim. App. 2000). Appellate courts should also afford nearly total "deference to trial courts' rulings on 'application of law to fact questions,' also known as 'mixed questions of law and fact,' if the resolution of those ultimate questions turns on an evaluation of credibility and demeanor." *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997) (citing *Villarreal v. State*, 935 S.W.2d 134, 139, 139–41 (Tex. Crim. App. 1996) (plurality op.) (McCormick, P.J., concurring)). Appellate courts may review mixed questions of law and fact not falling within this category on a de novo basis. *Id.* We must affirm the decision if it is "correct on any theory of law" that finds support in the record. *Osbourn v. State*, 92 S.W.3d 531, 538 (Tex. Crim. App. 2002). The record is "viewed in the light most favorable to the trial court's determination, and the judgment will be reversed only if it is arbitrary, unreasonable, or 'outside the zone of reasonable disagreement.'" *State v. Story*, 445 S.W.3d 729, 732 (Tex. Crim. App. 2014) (quoting *State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006)). Where, as here, the trial court did not make findings of fact and conclusions of law, we "assume the trial court made implicit findings of fact in support of the ruling as long as those implicit findings are supported by the record." *Burton v. State*, 339 S.W.3d 349, 358 (Tex. App.—Texarkana 2011, no pet.); *see Valtierra v. State*, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010).

### III. Analysis

As stated by Texas Court of Criminal Appeals,

When law enforcement has probable cause to believe that a container holds contraband or evidence of a crime, but has not secured a warrant, law enforcement may seize the property, pending the issuance of the warrant to examine the contents, if the exigencies of the circumstances demand it or some other recognized exception to the warrant requirement is present.

*Igboji v. State*, 666 S.W.3d 607, 614 (Tex. Crim. App. 2023) (citing *United States v. Place*, 462 U.S. 696, 701 (1983)).[3] "[T]he United States Supreme Court has 'frequently approved warrantless seizures of property . . . for the time necessary to secure a warrant, where a warrantless search was either held to be likely or likely would have been held impermissible.'" *Rafiq v. State*, 661 S.W.3d 827, 840 (Tex. App.—Beaumont 2022, pet. ref'd) (quoting *Segura*, 468 U.S. at 806). "When a defendant moves to suppress evidence based on a warrantless search, the State has the burden of showing that probable cause existed at the time the search was made and that exigent circumstances requiring immediate entry made obtaining a warrant impracticable." *Turrubiate v. State*, 399 S.W.3d 147, 151 (Tex. Crim. App. 2013), *abrogated by Igboji*, 666 S.W.3d 607.

Reynolds complains that the trial court erred in denying his motion to suppress because there was evidence of neither probable cause nor exigent circumstances justifying the warrantless seizure of his laptop computer. We do not agree.[4]

### A.    Probable Cause

"Probable cause exists when reasonably trustworthy circumstances within the knowledge of the police officer on the scene would lead him to reasonably believe that evidence of a crime will be found." *Turrubiate*, 399 S.W.3d at 151 (citing *McNairy v. State*, 835 S.W.2d 101, 106

---

[3]"[A] seizure affects only possessory interests, not privacy interests." *Segura v. United States*, 468 U.S. 796, 810 (1984).

[4]Reynolds includes in his brief a large quotation from *Coolidge v. New Hampshire*, 403 U.S. 443 (1971) (plurality op.), for its discussion on the "plain view" doctrine. We address his arguments about probable cause and exigent circumstances but see no need to address the plain view doctrine. Also, *Coolidge* is a plurality opinion and, therefore, not binding authority. *Pearson v. State*, 994 S.W.2d 176, 177 n.3 (Tex. Crim. App. 1999). Reynolds also invites us to review a map attached to his appellate brief. We decline that invitation because the map was not part of the trial or appellate record. *See* TEX. R. APP. P. 34.1; *Vanderbilt v. State*, 629 S.W.2d 709, 717 (Tex. Crim. App. 1981); *Brown v. State*, 632 S.W.3d 75, 79 (Tex. App.—El Paso 2020, no pet.).

5

(Tex. Crim. App. 1991), *abrogated in part by Turrubiate*, 399 S.W.3d at 153). "The probable-cause standard is incapable of precise definition or quantification into percentages because it deals with probabilities and depends on the totality of the circumstances." *Maryland v. Pringle*, 540 U.S. 366, 371 (2003). This is "a fluid concept" that is "not readily, or even usefully, reduced to a neat set of legal rules." *Illinois v. Gates*, 462 U.S. 213, 232 (1983).

"An officer may temporarily seize property without a warrant . . . if []he has 'probable cause to believe that a container holds contraband or evidence of a crime' and 'the exigencies of the circumstances demand it or some other recognized exception to the warrant requirement is present.'" *United States v. Burgard*, 675 F.3d 1029, 1031, 1032 (7th Cir. 2012) (quoting *Place*, 462 U.S. at 701) (discussing how an officer seized defendant's cell phone after the officer received tip from defendant's friend that phone contained "sexual images of young girls (possibly aged 14 or younger)" and how search warrant was later obtained to search phone for images).[5]

Collins had probable cause to believe the laptop computer contained evidence of the crime he was investigating. Collins had secured and served a search warrant for the Chandler Street residence Reynolds was known to frequent, Reynolds regularly connected to the IP address at that house, and Reynolds paid for the internet service at that house. That warrant authorized the seizure of items, including computers. The warrant application explained how computers and other peripheral devices could be used to obtain and retain evidence of the possession or promotion of child pornography. Reynolds told Collins that the laptop computer in

---

[5]In *Burgard*, law enforcement seized the appellant's cell phone without a warrant and found, as suspected, pornographic images of children. *Burgard*, 675 F.3d at 1030.

his parents' house had regularly been connected to the internet at the house at 2221 Chandler Street.

In *Rafiq*, Rafiq was a suspect in a murder investigation. Law enforcement had reason to believe Rafiq's cell phone contained evidence of the murder. "Rafiq confirmed he had used his phone after the investigation to communicate with [a witness]," he became nervous and gave evasive answers when asked if he had shot the victim, and he "refused to allow police to extract data from his phone." *Rafiq*, 661 S.W.3d at 841. One of the police officers testified that he believed the phone "would have documented [Rafiq's] geographical location to 'prove or disapprove (sic) where Mr. Rafiq was at the time the homicide occurred.'" *Id.* at 838.[6]

Reynolds's situation is like that in *Rafiq*. Collins had demonstrated probable cause to believe evidence of possession or promotion of child pornography would be found at the Chandler Street house to the degree necessary to obtain a search warrant for that address. Specifically, Collins was looking for evidence that could be located on a computer, and a laptop computer could very well have such evidence. Once Reynolds confirmed that the laptop

---

[6]*Rafiq* summarized the investigating officer's probable cause as follows:

> Given that cell phones are in such common use, that Rafiq and [the accomplice witness] were living together before and after [the murder victim's] disappearance, that Rafiq and [the murder victim] were the focus of interest in the investigation being conducted by police, and that Rafiq confirmed he had used his phone after the investigation to communicate with [the accomplice witness], it was objectively reasonable for a police officer with the information known to [the investigating officer] to reasonably suspect that Rafiq's phone would contain evidence of a crime relevant to [the murder victim's] disappearance and death. Based on the totality of the circumstances, we hold that [the investigating officer] had sufficient reasonable suspicion to justify temporarily seizing the phone to preserve the evidence that was on it for the time required to allow police to determine whether a magistrate would issue a search warrant allowing authorities to lawfully search the phone.

*Rafiq*, 661 S.W.3d at 841–42 (citing *Riley v. California*, 573 U.S. 373, 375 (2014)). We observe that, when the *Rafiq* court stated that "Rafiq and [the murder victim] were the focus of interest in the investigation," it likely meant that Rafiq and the accomplice witness were the focus of interest in the investigation. *Id.*

7

computer, which at that time was at the house on Green Blackmon Road, was frequently connected to the IP address at the house on Chandler Street, Collins could reasonably believe it contained the type of data or evidence germane to Collins's investigation.

## B. Exigent Circumstances[7]

The State established that Collins had probable cause to believe he would find evidence of promotion or possession of child pornography on Reynolds's laptop computer; however, the State still had to demonstrate that an exigent circumstance necessitated Collins's warrantless seizure of the laptop computer. "An officer may temporarily seize property without a warrant . . . if []he has 'probable cause to believe that a container holds contraband or evidence of a crime' and 'the exigencies of the circumstances demand it or some other recognized exception to the warrant requirement is present.'" *Burgard*, 675 F.3d at 1032 (quoting *Place*, 462 U.S. at 701); *see also Burgard* at 1031 (discussing how officer seized defendant's cell phone after officer received tip from defendant's friend that phone contained "sexual images of young girls (possibly aged 14 or younger)" and how search warrant was later obtained to search phone for images). "'[E]xigent circumstances,' includ[e] the need to prevent the destruction of evidence" and "permit police officers to conduct an otherwise impermissible search without first obtaining a warrant." *Kentucky v. King*, 563 U.S. 452, 455 (2011). "[O]nce law enforcement officers have secured a cell phone [or computer], there is no longer any risk that the arrestee [or owner] will be

---

[7]"The same facts which give rise to probable cause may also be relevant to an analysis of exigent circumstances." *State v. Triana*, 293 S.W.3d 224, 226 (Tex. App.—San Antonio 2009, pet. ref'd) (citing *Parker v. State*, 206 S.W.3d 593, 600–01 (Tex. Crim. App. 2006)).

able to delete incriminating data from the phone [or computer.]" *Riley v. California*, 573 U.S. 373, 388 (2014).

We again analogize the situation at bar with that in *Rafiq*. "Under the circumstances and viewing them as a whole, it was reasonable for [the investigating officer] to have believed that Rafiq, after leaving the interview, would wipe the phone of all evidence" of the murder "if he remained in possession of his phone." *Rafiq*, 661 S.W.3d at 841. Collins could have reasonably believed that, were Reynolds left in possession of the laptop computer, he would have attempted to remove any incriminating evidence. By the time Collins and Reynolds spoke at his parents' house, Reynolds knew that law enforcement was investigating him for possession or promotion of child pornography. Between Collins's knowledge of computers and his reasonable inferences about Reynolds's knowledge of computers and familiarity with the laptop computer at issue, Collins could reasonably believe that Reynolds knew how to delete files from the laptop computer. These facts are relevant to the trial court's determination of "the ultimate question at issue, which asks whether there is proof that [Collins] reasonably believed that removal or destruction of evidence was imminent." *Turrubiate*, 399 S.W.3d at 153.[8]

In *Rafiq*, one law enforcement officer testified that they seized the appellant's cell phone "[b]ecause it doesn't take long to reset a phone and erase everything on it or to get rid of it, throw it out the window, smash it, whatever you need to do to destroy what's stored on that phone." *Rafiq*, 661 S.W.3d at 838. When asked what exigent circumstances necessitated the

---

[8] *Cf. United States v. Place*, 462 U.S. 696, 704 (1983) ("Because of the inherently transient nature of drug courier activity at airports, allowing police to make brief investigative stops of persons at airports on reasonable suspicion of drug-trafficking substantially enhances the likelihood that police will be able to prevent the flow of narcotics into distribution channels.").

warrantless seizure, another officer testified that Rafiq "could [have] take[n] his phone and destroy[ed] the evidence, anything that[ was] on it." *Id.* The same could be said about a laptop computer, and that is essentially what Collins told the trial court in this case: "[Reynolds] could have wiped the computer, erased all of its contents. He could have thrown it in the dumpster." Collins was faced with an exigent circumstance warranting his seizure of the laptop computer.[9]

## IV. Conclusion

We find that Collins had probable cause to believe that Reynolds's laptop computer contained evidence material to Collins's investigation and that he was faced with an exigent circumstance—the possible destruction of any such evidence—when he seized Reynolds's laptop computer. We overrule Reynolds's point of error.

We affirm the trial court's judgment.

Charles van Cleef
Justice

Date Submitted:      September 3, 2024
Date Decided:       October 9, 2024

Do Not Publish

---

[9]*See Riley*, 573 U.S. at 388 (Noting that appellants "concede[d] that officers could have seized and secured their cell phones . . . while seeking a warrant" and concluding that "[t]hat [wa]s a sensible concession.").